**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 9 2002**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

MARILYNN J. SPIELMAN,

Plaintiff - Appellant,

v.

BLUE CROSS AND BLUE SHIELD
OF KANSAS, INC.,

Defendant - Appellee.

No. 00-3394

(D.C. No. 99-CV-4184-RDR)

(D. Kansas)

**ORDER AND JUDGMENT** *

Before **HENRY** , **HOLLOWAY,** and **LUCERO** , Circuit Judges.

Marilynn Spielman, who suffers from scleroderma (a rheumatic disease)

and esophageal dysmotility as a related condition, was terminated from her job as

a nurse consultant at Blue Cross and Blue Shield of Kansas, Inc. ("Blue Cross")

shortly after returning from leave. She filed this action against Blue Cross

alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§

---

* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

12101-12213. Ms. Spielman contended that Blue Cross failed to reasonably accommodate her disability by refusing to allow her to work from home and subsequently discharging her. The district court granted summary judgment to Blue Cross after reasoning that Ms. Spielman's poor work performance constituted a legitimate, nondiscriminatory reason for Blue Cross's decision not to accommodate her request to work at home and for her subsequent termination. Ms. Spielman now challenges that ruling. We have jurisdiction under 28 U.S.C. § 1291. For the reasons set forth below, we affirm.

## I. BACKGROUND

The following facts are undisputed. Ms. Spielman began working for Blue Cross on August 1, 1996 as a part-time employee. When hired, Ms. Spielman had scleroderma and esophageal dysmotility as a related condition.

In November 1996, Ms Spielman became a full-time nurse consultant. In that capacity, she performed compliance review activities in accordance with standards set under Blue Cross's contract with a state agency, the Kansas Social and Rehabilitative Services ("SRS"). Under Blue Cross's contract with SRS, Ms. Spielman's unit was to perform one hundred consumer reviews and approximately fifty provider reviews per quarter. Ms. Spielman, one of several individuals in her unit, shared a balanced caseload with her unit members.

Ms. Spielman's immediate supervisor was Becky Stauffer, and Mary Kennedy was her "in-line" supervisor. In April 1997, Ms. Stauffer met with Ms. Spielman to discuss Ms. Spielman's comparatively low case closure rates. At the time, Ms. Spielman had the lowest percentage of cases closed in comparison with her unit colleagues. In May 1997, she had the highest percentage of cases over six months old: Ms Spielman had seven such cases. There were four other analysts with cases over six months old, but each analyst had only one such case.

Blue Cross administered Ms. Spielman's first proficiency review on June 1, 1997. The review indicated that Ms. Spielman met the job's requirements. The review also contained several suggestions of areas to improve, including, "[t]imeliness of completing consumer and provider reviews" and "[i]mprov[ing] knowledge of the consumer review process." Aplt's App. at 59. Under the section titled "Actions to be taken toward achieving goals," the review stated: "Develop time management skills. Consider class on time management." Id. Finally, under the section regarding goals for the next six months was the following: "Improve percentage of provider reviews that are closed in 6 months and consumer reviews that are closed in one month." Id. Ms. Spielman, along with three other team members, received a three percent proficiency raise, which was the lowest percentage received.

Over the next few months, Ms. Stauffer and Ms. Kennedy continued discussions and followed up with correspondence concerning Ms. Spielman's completion of her assignments and her time management skills. On September 10, 1997, Ms. Stauffer requested that Ms. Spielman meet with Ms. Kennedy on September 16, 1997 to discuss Ms. Spielman's performance. Prior to the meeting, Ms. Stauffer compared Ms. Spielman's completion rate with other members of the team and determined that Ms. Spielman had continued to achieve the lowest performance level in the unit.

At the meeting, Ms. Spielman acknowledged her poor case closure rates. She indicated that she had spent significant time helping a co-worker to the detriment of her own work. Ms. Stauffer and Ms. Kennedy told Ms. Spielman she should be concentrating on her own work, not that of another employee. Ms. Spielman indicated she was confident she soon would be able to complete her assignments.

In conjunction with the meeting, Ms. Stauffer and Ms. Kennedy drafted a performance improvement plan to provide guidelines for Ms. Spielman. The plan noted that Ms. Spielman "had 6 provider cases which were opened more than 6 months ago and has 3 more that will be open more than 6 months by the end of the month." Aple's Supp. App. at 152. On several occasions, Ms. Spielman's

supervisors asked Ms. Spielman to review the plan and to provide them with feedback.

The day after the meeting, Ms. Spielman requested "intermittent" leave as a result of her scleroderma from October 1, 1997 through October 1, 1998. Id. at 153. She explained that the purpose of the leave was for "physician appointments, diagnostic testing, etc." Id. Ms. Kennedy signed the form on September 24, 1997. Id..

On October 6, 1997, Blue Cross notified Ms. Spielman that she was eligible for leave under the Family and Medical Leave Act (FMLA), 42 U.S.C. §§ 2601-2654, and that such leave would be counted against her annual FMLA leave entitlement. Ms. Spielman first spoke with Ms. Stauffer about her application for FMLA leave in early October 1997. When Ms. Spielman first applied for FMLA leave, she was unaware that she was going to be hospitalized. Ms. Spielman took continuous leave from November 20, 1997 to January 19, 1998. During this period, Ms. Spielman was also working on her cases at home.

In December 1997, Ms. Stauffer sought to have the case files that Ms. Spielman had taken home returned to work so that activity on them could resume. Some problems occurred in getting this accomplished, but the files were ultimately returned in early January 1998.

Ms. Spielman was released to return to work on January 19, 1998. On that date, Ms. Spielman's supervisors advised her that the case files needed to remain at work. Ms. Spielman requested to be allowed to do some of her work at home. Ms. Stauffer and Ms. Kennedy denied the request. They explained that Ms. Spielman did not meet the guidelines established under Blue Cross's "Working@ Home Policy" because she had six provider cases that were beyond the six-month completion deadline. Of these six cases, all were overdue as of November 1, 1997, three weeks before Ms. Spielman took her two months of FMLA leave.

On February 25, 1998, pursuant to the ADA, Ms. Spielman made a formal request for an accommodation to work at home. At the time, Ms. Spielman was on intravenous feeding twelve hours a day, from approximately 6:00 p.m. to 6:00 a.m. On March 2, 1998, Blue Cross denied Ms. Spielman's request. The response recommended that "[a]t the expiration of FMLA, [Ms. Spielman] be given an additional two weeks to seek another position not as an ADA required accommodation, but as an alternative to immediate termination due to her inability to perform the current position." Aplt's App. at 73. Ms. Spielman did not apply for any other position.

Ms. Spielman's last day of work was April 3, 1998. Ms. Spielman had not completed all of her work on the cases assigned to her at this time, and therefore, these cases were assigned to other staff. In June 1998, after Ms. Spielman's

employment with Blue Cross was terminated, Ms. Spielman filed for long-term disability benefits. In the prognosis section of Ms. Spielman's disability application, Ms. Spielman's physician stated that he did not think Ms. Spielman would be able to work. Ms. Spielman has continuously remained on disability benefits because her doctor has not released her to work.

## II. DISCUSSION

On appeal, Ms. Spielman challenges the district court's grant of summary judgment to Blue Cross on both her failure to accommodate and her wrongful termination claims. As to her failure to accommodate claim, she maintains that a reasonable factfinder could conclude that Blue Cross's reasons for not allowing her to work from home were pretextual and that the denial of her request constituted unlawful discrimination on the basis of her disability. She also contends that a reasonable factfinder could conclude that Blue Cross terminated her because of her disability.

"We review a district court's grant of summary judgment de novo, applying the same legal standard used by the district court." Hollins v. Delta Airlines, 238 F.3d 1255, 1257 (10th Cir. 2001). Summary judgment is proper if the moving party shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "When

applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." <u>Scull v. New Mexico</u>, 236 F.3d 588, 595 (10th Cir. 2000) (quotation omitted).

### A. Failure to Accommodate Claim

The ADA defines discrimination to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A). The statute thus establishes a cause of action for disabled employees whose employers fail to reasonably accommodate them. <u>See, e.g.</u>, <u>Templeton v. Neodata Servs., Inc.</u>, 162 F.3d 617 (10th Cir. 1998) (assessing employee's claim that employer failed to reasonably accommodate her). "However, an employer is not required to always provide the employee with the best possible accommodations or in the specific manner the employee requested." <u>Selenke v. Medical Imaging of Colo.</u>, 248 F.3d 1249, 1261 (10th Cir. 2001) (citing 29 C.F.R. § 1630.2(p)(1)). An employer retains "broad discretion in determining which alternative accommodation should be provided." <u>Id.</u> (citing 29 C.F.R. § 1630.9).

In order to establish a prima facie case of failure to accommodate under the ADA, a plaintiff must prove "(1) that he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position . . . .; and (4) that the [employer] refused to make such accommodations." Rhoads v. F.D.I.C., 257 F.3d 373, 387 n.11 (4th Cir. 2001); see also Selenke, 248 F.3d at 1261-63 (discussing failure to accommodate claim).[1]

In this case, Ms. Spielman contends that she was disabled under the ADA, and that Blue Cross's allowing her to work at home would have constituted a reasonable accommodation under the ADA. She observes that she requested this accommodation twice—when she returned to work on January 19, 1998 and when she filled out a form requesting this accommodation on February 25, 1998.

According to Ms. Spielman, there are genuine factual questions as to whether allowing her to work at home constituted a reasonable accommodation.

---

[1] An employer need not make a reasonable accommodation that would cause "an undue hardship." Den Hartog v. Wasatch Academy, 129 F.3d 1076, 1087 (10th Cir. 1997) (quoting 42 U.S.C. § 12112(b)(5)(A)). "The employer . . . bears the burden of persuasion on whether a proposed accommodation would impose an undue hardship." Smith v. Ameritech, 129 F.3d 857, 866 (6th Cir. 1997). "Undue hardship" means "an action requiring significant difficulty or expense" when considered in light of various factors. 42 U.S.C. § 12111(10)(A). The factors to be considered in determining whether an accommodation would cause an employer undue hardship are, among others: the nature and cost of the accommodation; the number of persons employed by the company; the financial resources of the company; and the impact of the accommodation upon the operation of the company. See 42 U.S.C. § 12111(10)(B).

She points to her own testimony that Blue Cross's Working@Home policy did not become effective until she and another team member approved it in February 1998. "Thus, the jury could reasonably find that the policy was not in effect on January 19, 1998, when [she] informally requested to work at home." Aplt's Br. at 18. Additionally, Ms. Spielman contends that Blue Cross had allowed her to work at home prior to January 19, 1998. She adds that she disputed Blue Cross's contention that she had failed to return work files from her home.

In response, Blue Cross does not contest the district court's finding that Ms. Spielman is disabled under the ADA. However, Blue Cross does argue that it was not required by the ADA to grant Ms. Spielman's requests to work at home.

Courts have taken contrasting approaches to the question at issue here—whether working at home may constitute a reasonable accommodation under the ADA. The Seventh Circuit has written:

> Most jobs in organizations public or private involve team work under supervision rather than solitary unsupervised work, and team work under supervision generally cannot be performed at home without a substantial reduction in the quality of the employee's performance. This will no doubt change as communications technology advances, but is the situation today. Generally, therefore, an employer is not required to accommodate a disability by allowing the disabled worker to work, by himself, without supervision, at home. . . . No doubt to this as to any generalization about so complex and varied an activity as employment there are exceptions, but it would take a very extraordinary case for the employee to be able to

> create a triable issue of the employer's failure to allow the employee to work at home.

Vande Zande v. Wisconsin Dept. of Admin., 44 F.3d 538, 544-45 (7th Cir. 1995); see also Kvoriak v. Maine, 259 F.3d 48, 54-58 (1st Cir. 2001) (affirming the grant of summary judgment to an employer on a failure to accommodate claim on the grounds that the essential function of the position of a claims adjudicator could not be performed at home). In contrast, the Ninth Circuit has stated that "[w]orking at home is a reasonable accommodation when the essential functions of the position can be performed at home and a work-at-home arrangement would not cause undue hardship for the employer." Humphrey v. Memorial Hosps. Assoc., 239 F.3d 1128, 1136 (9th Cir. 2001) (citing EEOC Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act, FEP (BNA) 405:7601, at 7626 (March 1, 1999)); see also Langon v. Department of Health and Human Servs., 959 F.2d 1053, 1060-61 (D.C. Cir.1992) (holding that an employer must consider requested accommodation of working at home). This circuit has not yet addressed this issue.

In this case, we need not resolve the question of whether, as a general rule, at-home work may constitute a reasonable accommodation under the ADA. Blue Cross introduced evidence establishing that it had promulgated a policy regarding working at home and Ms. Spielman did not meet the criteria for working at home

under this policy (an 80% performance rate for open cases). Moreover, as further discussed below in relation to Ms. Spielman's wrongful termination claim, Blue Cross's evidence establishes that, there were substantial difficulties with Ms. Spielman's work performance over an extended period of time. In light of these difficulties, even assuming that working at home may constitute a reasonable accommodation under the ADA, a reasonable factfinder could not have concluded that allowing Ms. Spielman to work at home constituted a reasonable accommodation in these circumstances. Cf. Kvoriak, 259 F.3d at 54-58 (rejecting a reasonable accommodation claim based upon the particular facts of the case). Accordingly, we conclude that the district court properly granted summary judgment on Ms. Spielman's failure to accommodate claim.

B. Wrongful Termination Claim

Ms. Spielman also contends that a genuine issue of material fact exists as to her wrongful termination claim based on 42 U.S.C. § 12112(a). The facts underlying this contention are closely related to her failure to accommodate claim.

"To establish a prima facie case of discrimination under the ADA, a plaintiff must demonstrate (1) that [she] is disabled within the meaning of the ADA; (2) that [she] is qualified–with or without reasonable accommodation; and (3) that [she] was discriminated against because of [her] disability." Tate v. Farmland Indus., 268 F.3d 989, 992 (10th Cir. 2001) (quotation marks and

citations omitted). In order to establish the third element, the plaintiff must "present some affirmative evidence that disability was a determining factor in the employer's decision." Morgan v. Hilti, 108 F.3d 1319, 1323 (10th Cir. 1997). A plaintiff may demonstrate pretext by showing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." Bullington v. United Air Lines, Inc.,186 F.3d 1301, 1317 (10th Cir. 1999).

Here, Blue Cross has offered such a legitimate, nondiscriminatory reason for Ms. Spielman's discharge. It contends that her poor work performance justified the action. In response, Ms. Spielman asserts that the jury might simply not believe that she was performing poorly when Blue Cross decided to terminate her employment. She points to her June 1, 1997 proficiency review, where she was deemed to be "meeting job requirements." Aplt's App. at 58-60. She further points out that on June 1, 1997, she had seven cases over six months old, while in January 1998, that number had been reduced to six.

Ms. Spielman also questions the timing and sequence of events leading up to her termination. Ms. Spielman contends that since the time she voiced a complaint about Ms. Stauffer to Blue Cross's EEO coordinator, Ms. Hill, in

-13-

August 1997, Ms. Stauffer was biased when evaluating Ms. Spielman's work performance.

Finally, Ms. Spielman questions the timing of her discharge in relation to her request for an accommodation to work at home. Ms. Kennedy's decision to discharge Ms. Spielman was made, at the latest, by Blue Cross's ADA committee on February 25, 1998, just over a month after she requested to work from home. Ms. Spielman maintains a jury could infer a discriminatory animus from the close proximity of the two events.

Blue Cross counters that Ms. Spielman's characterization of her June 1, 1997 performance review is inflated and taken out of context. Although she was deemed to be "meeting" her job requirements, that evaluation was but one amidst several criticisms. The report noted she needed to improve both the timeliness of the completion of reviews and her knowledge of the process. Other suggestions were offered, including specific performance goals and enrollment in time management classes. In addition, Blue Cross points to documentation of other performance issues predating the proficiency review.

We are persuaded by Blue Cross's arguments. As to the suggestion that the sequence of events leading up to her discharge is questionable, Ms. Spielman can provide no support of her suggestion that Ms. Stauffer evaluated Ms. Spielman negatively. The January 18, 1998 decision to reject her request to work at home

is supported by the terms of the policy. Finally, the ADA Committee's determination to deny Ms. Spielman's request to work from home and its decision to discharge Ms. Spielman were based upon her "serious performance issues." Aple's Supp. App. at 72-73.

We agree with the district court that the record contains no evidence from which a reasonable factfinder could conclude that defendant's stated reasons for terminating plaintiff's employment were pretextual. See Selenke, 248 F.3d at 1261. Ms. Spielman's poor work performance was well-documented. Ms. Spielman was unable to overcome any of the shortcomings pointed out during her proficiency evaluations. The record indicates these problems predated any discussion with the EEO Coordinator in August 1997. Ms Spielman cannot demonstrate that Blue Cross discriminated against her when it decided to terminate her in March 1998.

### III. CONCLUSION

For the reasons set forth above, we AFFIRM the district court's grant of summary judgment to Blue Cross on all of Ms. Spielman's claims.

Entered for the Court,

Robert H. Henry
Circuit Judge