**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 13 2004**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

DIANE M. MASON,

      Plaintiff-Appellant,

v.

AVAYA COMMUNICATIONS, INC.,

      Defendant-Appellee.

No. 03-6035

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. No. CIV-02-352-C)**

---

Kindanne C. Jones, Eddy & Jones, P.C., Oklahoma City, Oklahoma for Plaintiff-Appellant.

Sandy L. Schovanec (William S. Price with her on the brief), Phillips, McFall, McCaffrey, McVay & Murrah, Oklahoma City, Oklahoma for Defendant-Appellee.

---

Before **BRISCOE**, **BALDOCK**, and **LUCERO**, Circuit Judges.

---

**BALDOCK**, Circuit Judge.

---

      Diane Mason sued her former employer Avaya Communications, Inc. (Avaya)

alleging Avaya violated the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101-

12213.  Specifically, Mason alleged Avaya failed to accommodate her post traumatic

stress disorder by, among other ways, refusing to allow her to work from home. Instead, Avaya terminated Mason because she would not return to work. The district court granted Avaya's motion for summary judgment holding Mason was not a qualified individual with a disability under the ADA because (1) Mason's physical attendance in the workplace was an essential function of her job, and (2) Mason's request for an at-home accommodation was unreasonable. See 42 U.S.C. §§ 12112(a), 12111(8). Mason appeals. We have jurisdiction under 28 U.S.C. § 1291.

We review the district court's grant of summary judgment de novo, applying the same standard as the district court. Davidson v. Am. Online, Inc., 337 F.3d 1179, 1182 (10th Cir. 2003). Summary judgment is appropriate where no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Taylor v. Pepsi-Cola Co., 196 F.3d 1106, 1108 (10th Cir. 1999). Applying this standard, we affirm.

I.

The following facts are either undisputed or portrayed in the light most favorable to Mason. In 1986, Mason worked as a mail carrier for the United States Post Office in Edmond, Oklahoma. On August 20, 1986, Mason witnessed the murder of several of her then co-employees in the "Edmond Post Office massacre." After witnessing the event, Mason sought counseling. A doctor diagnosed Mason with post traumatic stress disorder. Mason ultimately sought employment elsewhere because working for the postal service aggravated the symptoms of her disorder.

Avaya is a global corporation specializing in communications systems, applications, and services. In January 1998, Avaya hired Mason as a "service coordinator." All of Avaya's service coordinators work at field service administration centers (administration centers) located in Arizona, Colorado, New Jersey, and Oklahoma. Mason was employed as a service coordinator in Avaya's Oklahoma City administration center. Mason's job as a service coordinator required her to schedule service appointments for technicians working in the field. If an Avaya customer encountered a problem with its communications network, the customer would contact an Avaya customer care center; an Avaya employee in the customer care center would prepare a "repair ticket" and enter it into Avaya's computer system; in turn, a service coordinator, such as Mason, would monitor the current days queue of repair tickets and assign them through the computer system to a technician in the field; the field technician would then address the customer's complaint. Mason's job required her to communicate with the various technicians by computer, telephone, and fax. From January 1998 until March 2000, Mason worked for Avaya without incident. Her performance was satisfactory.

On March 21, 2000, a co-employee of Mason, Kevin Lunsford, pulled out a knife during a verbal confrontation with another Avaya employee at the Oklahoma City administration center (Lunsford incident). Mason did not witness the Lunsford incident, but learned of it through her co-employees. After the incident, Avaya suspended

3

Lunsford for a week. While Lunsford was suspended, Mason learned from her co-employees that Lunsford had previously threatened to "go postal," retained a cache of weapons, and compiled a "hit list." The incident upset Mason, but she continued to work so long as Lunsford was not in the administration center. On March 27, 2000, however, Avaya informed its service coordinators that Lunsford would return to work the following day. Avaya explained it had conducted a fitness-for-duty examination on Lunsford and concluded that he could safely return to the workforce.

Upon learning of Lunsford's return, Mason "sickened." The next day, Mason called in sick because she was physically and emotionally unable to work with Lunsford at the administration center. Mason's doctors confirmed she was suffering from post traumatic stress disorder and was unable to work in an environment she perceived as unsafe. As a result, Avaya placed Mason on short-term disability. Mason related that she could not work in the same building as Lunsford; however, Mason felt she could return to work in Lunsford's absence.

On June 1, 2000, Mason requested Avaya accommodate her disorder by (1) relocating Lunsford, (2) allowing Mason to work at another Avaya facility in Oklahoma City, or (3) allowing her to work out of her home. As a result of Mason's request for an accommodation, Avaya conducted a further investigation into the Lunsford incident. After its second investigation, Avaya concluded that relocating Lunsford was not an option and Mason could not perform the service coordinator position from her

home because physical attendance at the administration center was a function of a service coordinator's job. Avaya suggested Mason should utilize its transfer program to determine the availability of other service coordinator positions.

Mason contacted someone in Avaya's transfer program and learned the only service coordinator position available in Oklahoma City was at the administration center where she and Lunsford worked. Mason did not inquire into the availability of service coordinator positions in other states because she did not want to leave Oklahoma. Mason never returned to work for Avaya and remained on short-term disability for a year. Avaya denied Mason's application for long term disability benefits. In April 2001, Avaya administratively discharged Mason because she was unable to return to the workforce. Mason subsequently filed a charge of disability discrimination with the EEOC, which concluded that reasonable cause existed to believe Avaya violated the ADA.

In March 2002, Plaintiff filed this lawsuit against Avaya alleging Avaya violated the ADA by failing to accommodate her disability and terminating her on the basis of her disability. The district court properly analyzed Mason's ADA claim. The court first concluded the essential functions of Mason's job required her to be physically present at Avaya's administration center. Therefore, the court reasoned that because Mason refused to work in Avaya's administration center during Lunsford's employ, she required an accommodation to perform the essential functions of her position. In analyzing Mason's requested accommodations, the court first rejected Mason's contention that the ADA

5

required Avaya to reassign, relocate, or terminate Lunsford in order to accommodate her disability. Next, the court concluded Mason's request to work at home was unreasonable because she failed to present any evidence she could perform the essential functions of her position from home. As a result, the district court entered judgment for Avaya because Mason failed to prove she was a qualified individual with a disability under the ADA.

## II.

The ADA prohibits discrimination against "a qualified individual with a disability because of the disability of such individual[.]" 42 U.S.C. § 12112(a). Discrimination under the ADA includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee[.]" Id. § 12112(b)(5)(A). To establish a prima facie case of discrimination under the ADA, an employee must show: (1) she is disabled within the meaning of the ADA; (2) she is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) she was discriminated against because of her disability. Davidson, 337 F.3d at 1188. Avaya concedes Mason is disabled under the ADA. Thus, we proceed directly to the question of whether Mason is qualified within the meaning of the ADA. Under the second element of the ADA's prima facie case, we employ a two-part analysis to determine whether an individual is qualified:

> First, the court determines whether the individual can perform the essential functions of the job. . . . Second, *if (but only if)* the court concludes that the

individual is unable to perform the essential functions of the job, the court determines whether any reasonable accommodation by the employer would enable h[er] to perform those functions.

Id. at 1190 (internal citation omitted) (emphasis added); see also 42 U.S.C. § 12111(8) (defining "qualified individual with a disability").

On appeal, Mason maintains her disability precludes her from working at Avaya's Oklahoma City administration center while Lunsford is an employee at the center. Mason contends, however, she could perform all the essential functions of her job with a reasonable accommodation. Mason has not challenged the district court's conclusion that her request to "relocate" Lunsford was unreasonable. See Milton v. Scrivner, Inc., 53 F.3d 1118, 1125 (10th Cir. 1995) (explaining an accommodation that adversely affects other employees is not required under the ADA). Additionally, Mason has not presented any evidence that Avaya currently has a vacant position in Oklahoma City to which she could transfer. Mason has not challenged the district court's conclusion that her request to transfer only within Oklahoma City was unreasonable. See Smith v. Midland Brake, Inc., 180 F.3d 1154, 1174-75 (10th Cir. 1999) (en banc) (holding that reassignment to a vacant position constitutes a possible accommodation, but an employer need not create new positions to accommodate an employee). Therefore, we only need to determine whether Mason can perform the essential functions of the service coordinator position; and if not, whether Mason's request to work from home is a reasonable accommodation

7

that would enable her to perform the essential functions of the service coordinator position.

A.

The plaintiff bears the burden of showing she is able to perform the essential functions of her job. US Airways, Inc. v. Barnett, 535 U.S. 391, 400 (2002). "Essential functions" are "the fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. § 1630.2(n)(1). Evidence considered in determining whether a particular function is essential includes: (1) the employer's judgment as to which functions are essential; (2) written job descriptions prepared before advertising or interviewing applicants for the job; (3) the amount of time spent on the job performing the function; (4) the consequences of not requiring the incumbent to perform the function; and (5) the work experience of past incumbents in the job. 29 C.F.R. § 1630.2(n)(3); see also Wells v. Shalala, 228 F.3d 1137, 1144 (10th Cir. 2000).

The ADA requires us to consider "the employer's judgment as to what functions of a job are essential[.]" 42 U.S.C. § 12111(8). The employer describes the job and functions required to perform that job. Anderson v. Coors Brewing Co., 181 F.3d 1171, 1177 (10th Cir. 1999). We will not second guess the employer's judgment when its description is job-related, uniformly enforced, and consistent with business necessity. Davidson, 337 F.3d at 1191. In short, the essential function "inquiry is not intended to

8

second guess the employer or to require the employer to lower company standards." Tate v. Farmland Indus., Inc., 268 F.3d 989, 993 (10th Cir. 2001).

While we have not previously addressed the question, other circuits have recognized physical attendance in the workplace is itself an essential function of most jobs. See Hypes v. First Commerce Corp., 134 F.3d 721, 727 (5th Cir. 1998) (per curiam) (collecting cases). In Hypes, the Fifth Circuit concluded that an essential function of a loan analyst's position was physical presence in the office because the position required teamwork. Id. at 726. In Gantt v. Wilson Sporting Goods Co., 143 F.3d 1042, 1047 (6th Cir. 1998), the Sixth Circuit recognized an employee could not perform the essential functions of her position for a sporting goods company when her disability precluded her from returning to the workplace. Similarly, in Tyndall v. Nat'l Educ. Centers Inc., 31 F.3d 209, 213 (4th Cir. 1994), the Fourth Circuit explained that even when an employee can satisfactorily perform the essential functions of her position, the employee "must be willing to demonstrate these skills by coming to work on a regular basis." The Fourth Circuit reasoned that "a regular and reliable level of attendance is a necessary element of most jobs." Id. As Judge Posner wrote, "[m]ost jobs in organizations public or private involve team work under supervision rather than solitary unsupervised work, and team work under supervision generally cannot be performed at home without a substantial reduction in the quality of the employee's performance." Vande Zande v. Wis. Dep't of Admin., 44 F.3d 538, 544 (7th Cir. 1995).

9

In this case, Avaya claims Mason could not perform the essential functions of the service coordinator position from home because her physical attendance at the administration center was an essential function of the position. According to Avaya, Mason's physical attendance at the center is an essential function of the service coordination position because the low-level hourly position is administrative in nature and requires supervision. Furthermore, a service coordinator's duties require teamwork. Consistent with 29 C.F.R. § 1630.2(n)(3), Avaya presented evidence to the district court demonstrating four of the evidentiary factors set forth by the EEOC regulations.[1] See supra at 8. Specifically, Avaya presented evidence that (1) it considers attendance at the administration center, supervision, and teamwork as essential functions of the service coordinator position, (2) all of its service coordinators work their entire shift at the administration centers, (3) it has never permitted a service coordinator to work anywhere other than an administration center, and (4) service coordinators cannot be adequately trained or supervised if they are not at the administration center.

Mason responds that her physical attendance at the administration center was not an essential function of the service coordinator position because she can perform all of

---

[1] The regulations also list the "terms of a collective bargaining agreement" and the "current work experience of incumbents in similar jobs" as evidence of whether a particular function is essential. 29 C.F.R. § 1630.2(n)(3)(v), (vii). Avaya concedes that it did not present evidence to the district court regarding the attendance requirements of similar jobs at Avaya and that Mason's collective bargaining agreement does not prevent her from working outside the administration center. (Aple's Br. at 19).

the essential functions of the job at home using a computer, telephone, and fax machine. In support of her argument, Mason relies on her own firsthand experience: "Ms. Mason testified that she had performed the duties of Service Coordinator for over two (2) years and was well aware of the job functions of that position. She explained, her job consisted of primarily working on the computer through phone and fax lines to coordinate service calls for [Avaya's] customers . . . ." (Aplt's Br. at 19-20). Mason also submits neither supervision nor teamwork are essential functions of a service coordinator position because Avaya's service coordinator job description "makes no mention of 'being supervised' or 'teamwork' as a duty or responsibility." See 29 C.F.R. § 1630.2(n)(3)(ii). With respect to teamwork, Mason argues her presence at the administration center is not essential because one of the other fourteen service coordinators in her group can perform the "teaming" duties, such as covering for a co-employee on break.[2] With respect to supervision, Mason simply points out that Avaya did not present any evidence indicating it created the service coordinator position so mid-level supervisors would have someone to supervise.

---

[2] Mason argues teamwork is not an essential function of the position and represents in her brief that she "presented evidence that with the proper equipment and technology, she could cover calls for other employees and be available to her co-workers and supervisors from an alternate location." (Aplt's Br. at 6). Mason cites to the deposition testimony of her supervisor, Donna Wissler, to support the foregoing proposition. Wissler's deposition testimony, however, does not support Mason's bald assertion. In fact, in specific reference to teamwork, Wissler testified "I don't know anything about the technology piece. I don't know if that could be done. With e-mail and fax, I don't know." (Aplt's App. at 230).

11

Avaya presented evidence, however, that it could not adequately supervise a service coordinator working from home. Assuming Avaya had the technology to permit Mason to work from home, Avaya established it still could not adequately supervise Mason if she was at home. Although Avaya could tell if Mason was logged into her computer, Avaya's supervisors would not be able to ascertain what she was doing while logged into the computer. Mason could, for example, engage in any number of non-work related activities while logged into her computer without Avaya's knowledge. The EEOC regulations recognize that "the inquiry into essential functions is not intended to second guess an employer's business judgment with regard to production standards, whether qualitative or quantitative, nor to require employers to lower such standards." See 29 C.F.R. § 1630 App. at 356. At a time when employers are justifiably concerned with productivity at the workplace, we are in no position to second guess Avaya's desire to directly supervise its lower level employees.

Similarly, Avaya presented significant evidence demonstrating teamwork is an essential function of the service coordinator position because the coordinators typically assist and cover for one another in a job even Mason described as "very hectic." Mason's suggestion that teamwork is not an essential function because other service coordinators can pick up the slack in her stead is simply irrelevant in determining whether teamwork is

an essential function of the job.[3]  As the Seventh Circuit noted in rejecting an argument nearly identical to Mason's:  "It is possible that any function, whether or not essential, could be assigned to additional employees.  The mere fact that others could do [plaintiff's] work does not show that the work is nonessential."  Basith v. Cook County, 241 F.3d 919, 929 (7th Cir. 2001).  We agree.  In fact, Mason's suggestion that the other service coordinators in her group could perform the "teaming" duties for her demonstrates she also considered those duties as functions of the job.  Id. at 928.

Mason's own testimony that she could perform the essential functions of the service coordinator position from home is insufficient under Fed. R. Civ. P. 56(c) to create a "genuine" issue of material fact concerning the essential functions of the service coordinator position.  In Wells, 228 F.3d at 1144, we held an employee's self-serving affidavit describing the essential functions of his position was, standing alone, insufficient to raise a genuine issue of material fact in light of the employer's overwhelming evidence to the contrary.  Here, the only evidence Mason proffered in support of her argument that she could perform the essential functions of her job from home, other than her own self-serving testimony, was the absence of attendance, supervision, and teamwork from the service coordinator job description.  We are not

---

[3] Mason's argument that the "teaming" duties are non-essential because other employees can perform those duties may go to the possibility of an accommodation; however, we have held an accommodation that would require other employees to work harder is unreasonable.  See Milton, 53 F.3d at 1125.

13

persuaded the absence of those functions from the job description demonstrates those functions were non-essential. As commonsense suggests, Avaya probably did not even consider informing its employees that they were actually required to show up at the workplace and work with co-employees under supervision when it drafted the service coordinator job description – that is a given. Consequently, we find the omission of physical attendance, teamwork, and supervision from the job description entirely unremarkable.

In cases arising under the ADA, we do not sit as "as a 'super personnel department' that second guesses employers' business judgments." See Simms v. Okla. *ex rel*. Dep't of Mental Health and Substance Abuse Servs., 165 F.3d 1321, 1330 (10th Cir. 1999) (noting our role in a Title VII case). The only evidence Mason submitted in the district court regarding the essential functions of the service coordinator position was her own self-serving testimony. We are reluctant to allow employees to define the essential functions of their positions based solely on their personal viewpoint and experience. See Wells, 228 F.3d at 1144-45. Bearing these propositions in mind, the district court properly held Mason's physical attendance at the administration center was an essential function of the service coordinator position because the position required supervision and teamwork. The question of whether an employee can perform the essential functions of her job is a mixed question of law and fact. Rascon v. US West Comm., Inc., 143 F.3d 1324, 1333 (10th Cir. 1998). *Assuming* a jury may determine the essential functions of a

job, we conclude Mason's case is not one in which the essential function inquiry must go to the jury because no reasonable jury could find for Mason applying the factors set forth by 29 C.F.R. § 1630. Ingerson v. Healthsouth Corp., 139 F.3d 912, 1998 WL 88154, *5 (10th Cir. 1998) (unpublished disposition). Because Mason's disability precludes her from physically attending the Oklahoma City administration center, an essential function of the service coordinator position, we must determine whether Avaya could reasonably accommodate her. See Frazier v. Simmons, 254 F.3d 1247, 1261 (10th Cir. 2001).

B.

To defeat an employer's motion for summary judgment, the employee must first demonstrate that an accommodation appears reasonable on its face. Barnett, 535 U.S. at 401; White v. York Int'l Corp., 45 F.3d 357, 361 (10th Cir. 1995). The burden of production then shifts to the employer to present evidence of its inability to accommodate. White, 45 F.3d at 361. If the employer presents such evidence, the employee has the burden of coming forward with evidence concerning her individual capabilities and suggestions for possible accommodations to rebut the employer's evidence. Id. Whether an accommodation is reasonable under the ADA is a mixed question of law and fact. Smith v. Diffee Ford-Lincoln-Mercury, Inc., 298 F.3d 955, 967 (10th Cir. 2002).

We have not specifically addressed whether working at home may constitute a reasonable accommodation under the ADA. See Spielman v. Blue Cross Blue Shield of Kan., Inc., No. 00-3394, 2002 WL 524549, at *3-4 (10th Cir. 2002) (unpublished

15

disposition).   We have consistently held, however, that an employee's request to be relieved from an essential function of her position is not, as a matter of law, a reasonable or even plausible accommodation.  Wells, 228 F.3d at 1145; Davidson, 337 F.3d at 1192 ("the reasonable accommodation requested by [the employee] is to eliminate that essential function, which an employer is not required to do."); Frazier, 254 F.3d at 1261 (holding an accommodation that eliminates the essential functions of the job is not reasonable); Smith v. Blue Cross Blue Shield of Kan., Inc., 102 F.3d 1075, 1076 (10th Cir. 1996) (same).  In fact, the ADA does not even require an employer to modify an essential function of an existing position in order to accommodate a disabled employee.  Martin v. Kansas, 190 F.3d 1120, 1133 (10th Cir. 2001) overruled on other grounds, Bd. of Trustees of Univ. of Ala. v. Garrett, 531 U.S. 356, 373-74 (2001).  Several other circuits have likewise recognized that an employer is not obligated by the ADA to eliminate or reallocate the essential functions of the job to accommodate a disabled employee.  See Phelps v. Optima Health, Inc., 251 F.3d 21, 26 (1st Cir. 2001);  Gilbert v. Frank, 949 F.2d 637, 642 (2d Cir. 1991); Martinson v. Kinney Shoe Corp., 104 F.3d 683, 687 (4th Cir. 1997); Gonzales v. City of New Braunfels, 176 F.3d 834, 838 (5th Cir. 1999); Hoskins v. Oakland County Sheriff's Dep't, 227 F.3d 719, 729-31 (6th Cir. 2000); Dvorak v. Mostardi Platt Assoc., Inc., 289 F.3d 479, 484-85 (7th Cir. 2002); Alexander v. Northland Inn, 321 F.3d 723, 728 (8th Cir. 2003); Earl v. Mervyns, Inc., 207 F.3d 1361, 1367 (11th Cir. 2000) (per curiam).

16

Many of our sister circuits have similarly held an employee's request for an at-home accommodation is unreasonable under the ADA. See, e.g., Vande Zande, 44 F.3d at 544-45. While these decisions have largely collapsed the "essential function" and "reasonable accommodation" analysis, they have all concluded a requested at-home accommodation is unreasonable when the accommodation eliminates an essential function of the job. For example, in Kvorjak v. Maine, 259 F.3d 48, 51 (1st Cir. 2001), a disabled employee who worked as a claims adjuster "requested the accommodation of working at home on a full-time, permanent basis." The First Circuit, deferring to the employer's evidence that training and teamwork were essential functions of the claims adjuster position, held the employee was not qualified under the ADA because he could not perform the essential functions of the claims adjudicator position from home. Id. at 57-58. Similarly, the Fifth Circuit held a disabled loan analyst's request for a "flex-time accommodation" that ostensibly would have allowed the employee to work from home was unreasonable because his presence in the office was an essential function of the loan analyst's position. Hypes, 134 F.3d at 726-27. The Sixth Circuit likewise held a disabled sales representative's request for an at-home accommodation was unreasonable under the ADA because the employee "failed to present any facts indicating that his was one of those exceptional cases where he could have 'performed at home without a substantial reduction in [the] quality of [his] performance.'" Smith v. Ameritech, 129 F.3d 857, 867 (6th Cir. 1997) (quoting Vande Zande, 44 F.3d at 544).

17

The only case to hold a triable issue existed on the reasonableness of an at-home accommodation was one in which the essential functions of the employment position could be performed at home. In Humphrey v. Mem'l Hosp. Ass'n, 239 F.3d 1128, 1136 (9th Cir. 2001), the Ninth Circuit held a triable issue existed on whether a disabled medical transcriptionist could perform the essential functions of her position with an at-home work accommodation. The Ninth Circuit explained "[w]orking at home is a reasonable accommodation when the essential functions of the position can be performed at home and a work-at-home arrangement would not cause undue hardship for the employer." Id. In Humphrey, a triable issue existed because "physical attendance at the [employer's] offices [was] not an essential job duty; in fact, the record ma[de] it clear that [the employer] permit[ted] some of its medical transcriptionists to work at home." Id. at 1137. In other words, physical presence in the workplace was not an essential function of a medical transcriptionist's job.

Although some courts have described the Ninth Circuit's approach to at-home accommodations as different from the majority of circuits, we perceive the difference, if any, as largely illusory. The Ninth Circuit in Humphrey was presented with the "unusual" or "extraordinary" case where evidence supported the employee's contention that he could perform the essential functions of his employment position from home because physical attendance in the workplace was not an essential function of his employment position. See Vande Zande, 44 F.3d at 544-45 (explaining the "majority" view is

18

illustrated by the Fourth Circuit's approach in Tyndall); Tyndall, 31 F.3d at 214 (explaining that "except in the unusual case where an employee can *effectively perform all work-related duties at-home*, an employee who does not come to work cannot perform *any* of his job functions, essential or otherwise.") (first emphasis added) (internal quotations omitted); Ameritech, 129 F.3d at 867 (noting the case was not an "exceptional" one where the employee could perform the essential functions of the job from home). In such a situation, "a triable issue of the employer's failure to allow the employee to work at home[]" may, in fact, exist. Vande Zande, 44 F.3d at 545; Humphrey, 239 F.3d at 1136-37.

In sum, a request to work at home is unreasonable if it eliminates an essential function of the job; however, summary adjudication may be improper when the employee has presented evidence she could perform the essential functions of her position at home thereby making the at-home accommodation request at least facially reasonable. See White, 45 F.3d at 361 (allocating the burden of proof in determining the reasonableness of a requested accommodation). The Supreme Court has generally eschewed per se rules under the ADA, and we think the determination of whether a request for an at-home accommodation is reasonable must likewise be made on a case-by-case basis. See Albertson's, Inc. v. Kirkingburg, 527 U.S. 555, 566 (1999) (explaining the ADA mandates case-by-case analysis by defining disability with respect to the individual). Granted, the "determination of which functions are essential may be critical to the

19

determination of whether or not the individual with a disability is qualified[,]" 29 C.F.R. § 1630 App. at 355; nevertheless, that determination must be made on the facts of each case taking into the consideration the particular individual's disability and employment position.

In this case, Mason's request for an at-home accommodation is unreasonable on its face because it seeks to eliminate an essential function of the service coordinator position. White, 45 F.3d at 361; Wells, 228 F.3d at 1145. As explained above, Mason's physical attendance in Avaya's administration center is an essential function of the service coordinator position. Mason's request to work at home would eliminate physical attendance at the administration center from the service coordinator position. Under the ADA, Avaya is not required to eliminate or change the essential functions of the service coordinator position in order to accommodate Mason's disability. Hence, Mason's request for an at-home accommodation is, as a matter of law, unreasonable.[4]

---

[4] Mason also contends that even if her at-home accommodation request was unreasonable, Avaya failed to initiate the "informal interactive process" to discover alternative accommodations. See 29 C.F.R. § 1630.2(o)(3). Avaya, however, was not required to engage in the interactive process because Mason was not a qualified individual with a disability under the ADA. See White, 45 F.3d at 363; Smith, 180 F.3d at 1174. Additionally, Mason argues for the first time on appeal that her requested at-home work accommodation would not cause Avaya an undue hardship. We need not reach whether Avaya could prove the undue hardship affirmative defense, an issue not raised in the district court, because Mason has not carried her burden of proving a prima facie case of disability discrimination. Smith, 180 F.3d at 1179.

20

III.

Mason was not a qualified individual with a disability under the ADA because she could not perform the essential functions of the service coordinator position with or without a reasonable accommodation. Therefore, Mason failed to establish a prima facie case of disability discrimination under the ADA.

AFFIRMED.