FILED
United States Court of Appeals
Tenth Circuit

May 8, 2013

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

REBECCA M. MURPHY,

       Plaintiff-Appellant,

v.

SAMSON RESOURCES COMPANY,
a Domestic For Profit Business
Corporation,

       Defendant-Appellee.

No. 12-5084
(D.C. No. 4:10-CV-00694-GKF-TLW)
(N.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, Circuit Judge, **PORFILIO**, Senior Circuit Judge, and
**MATHESON**, Circuit Judge.

Plaintiff-appellant Rebecca M. Murphy ("Murphy") was formerly an employee

of Samson Resources Company ("Samson"). Samson terminated Murphy in

December 2008 for job abandonment. Murphy brought suit alleging violations of the

Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112 and the Family and

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Medical Leave Act ("FMLA"), 29 U.S.C. § 2615. She also alleged state law claims for breach of employment contract, intentional infliction of emotional distress, and violation of the Oklahoma Anti-discrimination Act ("OADA"). Murphy appeals the district court's grant of summary judgment in favor of Samson on the ADA, FMLA, and breach of contract claims. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. Background

In September 2006, Murphy became employed by Samson as an accounting assistant. Her duties included preparing vouchers and journal entries to record invoices, timely processing payments to third-party landmen, and ensuring that all transactions were properly approved, coded, and paid on a timely basis, under close supervision. Additionally, Murphy's job description stated that regular and punctual attendance was an essential function of the job.

During her employment at Samson, Murphy experienced migraine headaches that at times required her to leave work. Samson permitted Murphy to "make up" time missed for unplanned absences resulting from personal or family emergencies or due to her migraines. Aplt. App. at 156, 185-95. But by April 2008, Murphy was unable to make up all her time missed from work and had a negative paid time off balance.

Additionally, there were some performance issues regarding Murphy's work. Performance issues including keying errors, coding errors, payments to the wrong

vendors, and untimely payments were documented in March, May, and August of 2008. Murphy also applied for an internal position as a Land Technician on June 11, 2008. Murphy's supervisor, Janice King, signed the application on that date. Brenda Bacon, Murphy's manager, however, declined to forward Murphy's application to Samson's human resources department. Bacon did not endorse Murphy's application because of performance and attendance issues.

Due to her migraines, on June 19, 2008, Murphy filed her application for FMLA leave. Samson approved her application on June 23, 2008. Murphy thereafter intermittently used FMLA leave when she needed to leave work due to a migraine. Samson also had a Short Term Disability ("STD") Policy providing for payment of benefits for up to twenty-six weeks of disability leave. Samson's STD leave ran concurrently with FMLA leave. In September 2008 Murphy requested, and Samson approved, STD leave. She executed an STD agreement. The STD policy required that employees submit a doctor's certification explaining the necessity for the employee's absence. Murphy complied with this requirement in October and November 2008.

On November 10, 2008, Murphy submitted a doctor's certification from her neurologist, Keith Simmons, D.O., excusing her from work until November 20, 2008. On November 21, 2008, she emailed Samson, promising to submit a new doctor's certification after her appointment with Dr. Simmons the following week. When

Murphy did not submit any updated doctor's certification extending her STD leave or return to work, Samson terminated her for job abandonment on December 1, 2008.

Murphy then brought the instant suit. Her ADA claim alleged that she was discriminated against on the basis of her migraines and that Samson did not consider reasonable accommodations. Her FMLA claim alleged Samson retaliated against her for her exercise of FMLA rights. Her breach of contract claim alleged Samson violated the STD agreement. We review the district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the non-moving party. *Robert v. Bd. of Cnty. Comm'rs*, 691 F.3d 1211, 1216 (10th Cir. 2012).

## II. Discussion

### A. ADA Discrimination Claim

The ADA prohibits covered employers from discriminating against "a qualified individual on the basis of disability." 42 U.S.C. § 12112(a).[1] The burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies to ADA discrimination claims. *Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1141 (10th Cir. 2011). Under this framework, a plaintiff must first establish a prima facie case of discrimination by showing that she

---

[1] In 2008, Congress passed the ADA Amendments Act, Pub. L. No. 110-325, 122 Stat. 3553, which did not take effect until January 1, 2009, which is after the alleged discrimination in this case. Because the Amendments Act does not apply retroactively, we apply the law as it stood in 2008. *See Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1144 (10th Cir. 2011).

"(1) is a disabled person as defined by the ADA; (2) is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) suffered discrimination by an employer or prospective employer because of that disability." *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1037-38 (10th Cir. 2011) (internal quotation marks omitted). "In order to demonstrate discrimination, a plaintiff generally must show that [s]he has suffered an adverse employment action because of the disability." *Id.* at 1038 (internal quotation marks omitted).

If a plaintiff establishes her prima facie case, "the burden would shift to [the defendant] to articulate some legitimate, nondiscriminatory reason for its actions" and the plaintiff "would then bear the ultimate burden of showing that [the defendant's] proffered reason is in fact a pretext designed to mask discrimination." *Carter*, 662 F.3d at 1141 (internal quotation marks omitted). The district court held that Murphy did not establish elements two or three of her prima facie case of discrimination.

As to the second element, determining whether an individual is "qualified" within the meaning of the ADA involves a two-part inquiry: 1) whether the individual can perform the essential functions of the job; and 2) if the individual is unable to perform the essential functions of the job, whether any reasonable accommodation by the employer would enable her to perform those functions. *Mason v. Avaya Commc'ns, Inc.*, 357 F.3d 1114, 1118 (10th Cir. 2004). "'Essential

- 5 -

functions' are 'the fundamental job duties of the employment position the individual with a disability holds or desires.'" *Id*. at 1119 (quoting 29 C.F.R. § 1630.2(n)(1)). In determining whether a particular function is essential, courts may consider the employer's judgment as to which functions are essential and written job descriptions. *See id*.; *see also* 29 C.F.R. § 1630.2 (n)(3) (listing other factors). Considering Samson's judgment as to what functions were essential and Samson's job description for an accounting assistant, the district court concluded that regular and punctual attendance is an essential function of Murphy's position. *See Mason*, 357 F.3d at 1122 (concluding that physical attendance was an essential function of the position in question). It further concluded that Murphy could not perform this essential function and that Murphy did not present evidence of a reasonable accommodation.

Murphy does not dispute that regular and punctual attendance is an essential function of her position. She argues instead that the district court erred because a jury could conclude she is qualified because a flexible work schedule is a reasonable accommodation that would enable her to perform the essential functions of her position. The district court determined that such an accommodation was unreasonable on its face, noting the time sensitive nature of the tasks in Murphy's position and the requirement for close supervision of her work. It further observed that Murphy's request for a flexible schedule would dispense with Samson's punctual attendance requirement.

But Murphy argues that a flexible work schedule is a reasonable accommodation. In support, she claims the district court failed to consider *Valle-Arce v. Puerto Rico Ports Auth.*, case law from the First Circuit, which she argues supported her position that a flexible work schedule is a reasonable accommodation. *See* 651 F.3d 190 (1st Cir. 2011). We disagree. The district court considered and rejected *Valle-Arce*. It recognized that *Valle-Arce* was not factually analogous. There, the plaintiff had been allowed to work a flexible schedule as to her arrival and departure times for several years and had not been reprimanded for her attendance. *See id.* at 194, 200. In the instant matter, Samson permitted Murphy to make up time she had missed but this situation was not working well as Murphy committed performance errors and even with a flexible schedule could not make up all the time that she missed.

We perceive no error in the district court's rejection of *Valle-Arce*. To the extent Murphy otherwise argues a flexible work schedule is a reasonable accommodation, we agree with the district court that under the circumstances here it is not. *See Mason*, 357 F.3d at 1122 ("We have consistently held . . . that an employee's request to be relieved from an essential function of the position is not, as a matter of law, a reasonable or even plausible accommodation."); *Maziarka v. Mills Fleet Farm, Inc.*, 245 F.3d 675, 681-82 (8th Cir. 2001) (employee's requested accommodation of making up time missed due to disability was unreasonable

because employee could not perform essential function of regular and predictable attendance).

Murphy additionally argues that extended leave pursuant to Samson's STD policy constitutes a reasonable accommodation. The district court stated that a leave of absence is not a reasonable accommodation where, as here, an employee continues to seek leave and it is uncertain if or when she will be able to return to work. We agree. An allowance of time for medical care or treatment may constitute a reasonable accommodation. *See Cisneros v. Wilson*, 226 F.3d 1113, 1129 (10th Cir. 2000), *overruled on other grounds by Bd. of Trs. Of Univ. of Ala. v. Garrett*, 531 U.S. 356 (2001). But an employee must provide an expected duration of the impairment. *Id*. at 1130. "Without an expected duration of an impairment, an employer cannot determine whether an employee will be able to perform the essential functions of the job *in the near future* and therefore whether the leave request is a 'reasonable' accommodation." *Id*. Murphy failed to present evidence of the expected duration of her impairment. Indeed, the evidence shows it was uncertain if or when Murphy would be able to return to work given the sporadic nature of her migraines.

Accordingly, we conclude the district court did not err in finding that Murphy did not establish that she was a qualified individual within the meaning of the ADA. Murphy's discrimination claim thus fails. Because we agree that Murphy is not qualified, we do not address the other requirements.

**B. FMLA Retaliation Claim**

"The FMLA makes it unlawful for an employer to retaliate against an employee for exercising her rights to FMLA leave." *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012); *see also* 29 U.S.C. § 2615(a). Murphy's FMLA retaliation claim, like her ADA claim, is subject to the burden-shifting analysis of *McDonnell Douglas*. *See Khalik*, 671 F.3d at 1193. "[T]o establish a prima facie case of retaliation under the FMLA, a plaintiff must show (1) she engaged in protected activity, (2) the employer took a materially adverse action, and (3) there is a causal connection between the two." *Id.*

Murphy asserts that Samson retaliated against her for taking protected leave under the FMLA. In the district court, Murphy asserted that Samson took adverse actions by refusing to allow her to apply for an internal transfer, giving her a negative performance review, and terminating her. In addressing causation, the district court first recognized that Murphy submitted the internal job application on June 11, 2008, before she applied for FMLA leave on June 16, 2008. It concluded Murphy's manager's refusal to submit the job application to Samson's human resources department could not have been because Murphy requested FMLA leave. The record supports this determination. Murphy's manager discussed with Murphy her attendance and performance issues as the reason for declining to forward the internal job application. Further, a note dated June 11, 2008, indicates Murphy discussed her manager's concerns and the refusal to forward the application with her supervisor.

But based on temporal proximity, the district court determined that Murphy established a causal connection between her protected FMLA leave and her performance evaluation and termination, and, thus established a prima facie case of retaliation. Samson proffered that the negative performance evaluation was based on unsatisfactory work performance. It further proffered that it terminated Murphy because she failed to return to work following the expiration of her short-term disability leave and did not provide a doctor's certification to extend the leave. Because Samson proffered legitimate non-retaliatory reasons for Murphy's performance review and termination, the burden shifted back to Murphy to present evidence to suggest Samson's stated reasons were pretextual. *See id*. at 1192. The district court determined that Murphy failed to establish that Samson's adverse employment actions were pretextual.

On appeal, Murphy argues the district court failed to view the evidence in the light most favorable to her. To survive summary judgment, Murphy must show that there is a genuine issue of material fact as to whether Samson's proffered reason for the challenged action is pretextual – i.e., unworthy of belief. *Kendrick v. Penske Transp. Servs. Inc*., 220 F.3d 1220, 1230 (10th Cir. 2000). She "can demonstrate pretext by showing weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's reasons for its action, which a reasonable fact finder could rationally find unworthy of credence." *Richmond v. ONEOK, Inc*., 120 F.3d 205, 209 (10th Cir. 1997) (internal quotation marks omitted). But "mere conjecture

that the employer's explanation is pretext is insufficient to defeat summary judgment." *Etsitty v. Utah Transit Auth.*, 502 F.3d 1215, 1225 (10th Cir. 2007) (alteration and internal quotation marks omitted).

Regarding the denial of her internal job application, Murphy claims that her alleged performance issues were pretextual because there was evidence that Samson did not forward her application due to her frequent absences. But as we have previously determined, Murphy has not established that Samson's refusal to forward Murphy's application was done in retaliation for requesting or exercising FMLA leave. In other words, again, Murphy's internal job application was not forwarded even before she requested FMLA leave. Accordingly, this fails to establish pretext.

Murphy further claims the reason for her unfavorable performance review was pretextual because the evidence established that Murphy informed King during her review that she had been trained to perform her job responsibilities in a different manner. She also claimed that King failed to consult Murphy's previous performance review. Despite these assertions, no evidence suggests Samson's legitimate reason for giving an unfavorable performance review was a pretext for retaliation.

Murphy's 2007-2008 performance review indicated that she did not pay certain invoices in a timely manner. The record establishes that Murphy committed performance errors including keying errors, coding errors, and payment to the wrong vendors before she requested FMLA leave. And performance errors after taking

- 11 -

FMLA leave were also documented. By August 2008, Murphy's approval authority to pay invoices was lowered due to the continued volume and significance of her performance errors. Accordingly, the evidence supports Samson's honest belief that Murphy was not performing her job accurately. *See Johnson v. Weld Cty*., 594 F.3d 1202, 1211 (10th Cir. 2010) (requiring employer to honestly believe reasons it gave and to act in good faith based on what it believed). No evidence suggests that Samson's criticism of certain aspects of Murphy's work in the 2007-2008 performance review was based on her exercise of her FMLA rights.

Similarly, to the extent Murphy argues that the alleged difference in her training is the reason for untimely payment of invoices, again there is no evidence that Samson did not honestly believe that Murphy was performing her job inaccurately.

Finally, Murphy contends that her failure to submit an updated doctor's certification for her STD leave is also pretext for retaliation. She claims Samson terminated her prior to placing her on a no-pay status as indicated in her STD agreement. She also claims she was diligent in her efforts to submit her doctor's certifications to Samson. As to her first claim, the STD policy requires a doctor's certification explaining the necessity for the employee's absence. The policy further states that if an employee does not return to active employment after STD benefits cease, the employee will be considered to have abandoned her job and will be

terminated, unless a claim for long term disability benefits is pending. Murphy's STD agreement similarly imposes this requirement.

The record establishes that Murphy was approved STD leave through November 20, 2008. On November 21, 2008, Murphy sent Samson an email stating that her neurologist was going to keep her off of work and promising that she "will get another note or letter for you next week when I meet with Dr. Simmons . . . [and that] I'll get a new note to you ASAP." Aplt. App. at 232. But as of December 1, 2008, Murphy had not submitted an updated doctor's certification extending her leave of absence or returned to work at Samson. Accordingly, on December 1, 2008, Samson terminated Murphy for job abandonment.

We conclude the record does not demonstrate evidence of pretext in Samson's termination of Murphy. The district court correctly entered summary judgment for Samson on the FMLA retaliation claim.

## C. Breach of Contract Claim

Murphy next argues the district court erred in dismissing her breach of contract claim. She claims there is evidence Samson breached the STD agreement by failing to allow her time on a no-pay status and by terminating her when her doctor's certification was still in effect. We disagree.

The STD agreement provides "[i]f you do not submit an updated physician's certification you will be placed on a no pay status until the certification is received by the Samson HR Department." Aplt. App. at 222. It further states "[i]f you do not

return to active employment after your STD benefits cease, your employment will be terminated, unless your Long Term Disability . . . application is pending." *Id*. As previously discussed, Murphy did not provide an updated doctor's certification or return to work after November 20, 2008. Because Murphy did not apply for long term disability benefits, pursuant to the express terms of the STD agreement, Samson was entitled to terminate Murphy for job abandonment.

We further agree with the district court that Murphy's last doctor's certification only excused her from work until November 20, 2008. Although that note also indicated Dr. Simmons checked the "pending" line which provided "pending tests, treatment, and followup [appointment with] specialist in Oklahoma City," *Id*. at 231, this does not abrogate the need for a specific return date. And importantly, the record establishes that Murphy obtained an updated doctor's certification from Dr. Simmons as of November 26, 2008, but did not submit it to Samson until December 2, 2008, after she had been terminated. We conclude, as did the district court, that Murphy's breach of contract claim fails.

### III.    Conclusion

The judgment of the district court is affirmed.

Entered for the Court

John C. Porfilio
Senior Circuit Judge

- 14 -