**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 8, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JOAN UNREIN,

               Appellant-Plaintiff,

    v.

PHC-FORT MORGAN, INC., doing
business as Colorado Plains Medical
Center,

               Defendant-Appellee.

No. 20-1219

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. NO. 1:17-CV-02846-REB-SKC)**

---

Zac Garthe, Cambridge Law, Denver, Colorado, for Appellant.

Mark W. Peters (Kierstin J.A. Jodway with him on the brief), Waller Lansden
Dortch & Davis, LLP, Nashville, Tennessee, for Appellee.

---

Before **TYMKOVICH**, Chief Judge, **HARTZ**, and **PHILLIPS**, Circuit Judges.

---

**TYMKOVICH**, Chief Judge.

---

    Joan Unrein became legally blind and could no longer drive herself to

work, a 120 mile round trip. She asked her employer, Colorado Plains Medical

Center,[1] to allow her to work a flexible schedule dependent on her ability to secure rides. The Medical Center permitted this arrangement for a while, but it became a problem because Unrein's physical presence at the hospital was unpredictable. The flexible schedule arrangement ended in 2016, and it was never reinstated. After Unrein was terminated, she sued the Medical Center for failure to accommodate her disability in violation of the Americans with Disabilities Act and the Colorado Anti-Discrimination Act. After a bench trial, the district court entered judgment in favor of the Medical Center because it concluded Unrein's accommodation request was unreasonable since a physical presence at the hospital on a set and predictable schedule was an essential job function of her position.

Unrein appealed. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm. We agree that Unrein's physical presence at the hospital on a set and predictable schedule was essential to her job, and, in any event, the ADA does not require an employer to accommodate employees' non-work related barriers created by personal lifestyle choices.

---

[1] Defendant-Appellee PHC-Fort Morgan, Inc., does business as the Colorado Plains Medical Center. For purposes of this opinion, we refer to the Defendant-Appellee as "the Medical Center" and the facility where Unrein worked as "the hospital."

# I. Background

Joan Unrein worked as a Clinical Dietitian at the Colorado Plains Medical Center for almost two decades. She lived in the rural town of Fleming, Colorado, some sixty miles from the hospital. This extensive commute presented no problem for Unrein and the Medical Center—until it did. Unrein became legally blind and could no longer drive herself to and from work. The culprit of her disability was vitelliform macular dystrophy, an irreversible condition that distorts Unrein's vision and makes it difficult for her to perceive motion or see without magnifying equipment. Once she made it to work, Unrein's disability caused no issues, largely because the Medical Center purchased expensive magnifying equipment at her request. But Unrein's transportation barrier outside the workplace—her inability to drive and secure reliable rides—created problems.

Unrein could not drive herself, nor could she secure a ride service or public transportation to get her to work. Consequently, she relied on friends and family for rides. The sixty mile commute was an hour each way, and often Unrein's rides would be unavailable or back out at the last minute. Winter weather proved to be a problem as well. Unrein thus could not guarantee when she would be physically present at the hospital.

This problem led Unrein to request an accommodation: a flexible schedule "to accommodate [her] transportation." Aplt. App. Vol. I at 133. After some consideration, the Medical Center approved Unrein's request, but not without

limitation. The Medical Center instructed Unrein to communicate with her supervisor, Tracy Fisher, about necessary schedule changes. The Medical Center also noted its expectation that Unrein work at least thirty-two hours per week, the majority of which should be performed on-site at the hospital. The Medical Center reasoned that "[a] set schedule communicated with [Fisher] is necessary to provide quality [dietetic] services and ensure patient care is not compromised." *Id*. Finally, the Medical Center warned: "If at any time we feel that your request for accommodation is unreasonable, puts an un-due burden on another employee, reduces the quality of patient care, or risks the safety of yourself or anyone else, we will immediately discuss with you the appropriate action at that time." *Id*.

The Medical Center tried out Unrein's flexible schedule for fifteen months. But this attempt proved to be a failure, as Unrein was unable to establish a regular, set schedule and to communicate it with her supervisor. The Medical Center received complaints about Unrein's failure to be physically present at the hospital on a set and predictable schedule, and the Medical Center also believed Unrein's erratic schedule contributed to low patient satisfaction scores. Moreover, Unrein's performance evaluations were less than stellar while on the flexible schedule. The Medical Center evaluated its employees' performances annually on a five-point scale. While Unrein was working the flexible schedule, her performance dropped from 2.35 (mid-competent) to 2.1 (barely competent).

After Unrein's flexible schedule arrangement ended, she asked the Medical Center to reinstate it. While pending, she amended her request by asking to telecommute full-time. The Medical Center denied Unrein's request because, at minimum, the Clinical Dietitian position requires over four hours of in-person face-to-face interactions per day, and Unrein's request to telecommute full-time would eliminate all in-person face-to-face interactions.[2]

Days before the Medical Center issued this decision, Unrein's physician placed her on full-time medical leave (unrelated to her vision disability) with an unknown return to work date. The Medical Center granted each of Unrein's medical leave requests, even after her leave technically ran out. Four months after Unrein went on full-time medical leave, Unrein's physician notified the Medical Center that she would "be unable to work in any capacity until further notice." Aplt. App. Vol. V at 135. The Medical Center was never notified that Unrein could return to work.

After seven months of full-time medical leave and no return-to-work date for Unrein, and after she was approved for long-term disability and social security

---

[2] The Medical Center explains that face-to-face interactions and physical presence are necessary because hospital policy requires all nutrition screening referrals to be performed in-person by the Clinical Dietitian within 48 hours and all physician-ordered consults to be performed in-person by the Clinical Dietitian within 24 hours. *See* Aple. Br. at 9. The Medical Center further explains that the Clinical Dietitian duties include tray line assembly, review, training, and delivery. *See* Aplt. App. Vol I at 149–50.

benefits, the Medical Center terminated her employment.  In the termination

letter, the Medical Center explained to Unrein:

> Predictable and regular attendance at the hospital so that you can meet with patients, assess their condition and perform other tasks is an essential function of your position as a Clinical Dietician that cannot be accommodated through telecommuting and irregular and unpredictable physical presence at the hospital.  You have made clear that you cannot work within those parameters and you are unable to return to a full-time position at the hospital that requires your physical presence.

*Id*. at 231.  The Medical Center offered to continue discussing other

accommodations with Unrein and encouraged her to apply for other open

positions for which she was qualified.  She never did so.

Unrein sued the Medical Center for disability discrimination in violation of

the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*., and the Colorado

Anti-Discrimination Act, Colo. Rev. Stat. § 24-34-401 *et seq*.[3]  She asserted

discrimination based on the Medical Center's alleged failure to accommodate her

disability, failure to engage in the interactive process, and retaliation against her

after reporting discrimination.  Unrein's claims proceeded to a three-day bench

trial.  The district court rejected each of Unrein's theories of liability and entered

judgment in favor of the Medical Center.  On appeal, Unrein challenges only the

---

[3] The district court properly treated Unrein's ADA and CADA claims the same.  *See Tesmer v. Colo. High Sch. Activities Ass'n*, 140 P.3d 249, 253 (Colo. App. 2006) ("Whenever possible, the CADA should be interpreted consistently with the Americans with Disabilities Act.").  We do the same here.

district court's unfavorable entry of judgment as to her failure to accommodate claim.[4]

## II. Analysis

### A. The ADA

Unrein's failure to accommodate claim derives from the Americans with Disabilities Act. The ADA "forbids discrimination against disabled individuals in major areas of public life, among them employment (Title I of the Act), public services (Title II), and public accommodations (Title III)." *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001). As relevant here, the ADA prohibits discrimination by a covered entity "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). This requires an aggrieved plaintiff to demonstrate "(1) she is disabled as defined by the ADA; (2) she is qualified to perform the essential functions of the job with or without reasonable accommodation; and (3) she suffered discrimination on the basis of

---

[4] Unrein argues the Medical Center unreasonably rescinded *and* unreasonably refused to reinstate her existing flexible schedule arrangement. But before the Medical Center could grant or deny her request to reinstate her flexible schedule, Unrein revised it and requested to telecommute full-time. Her telecommuting request is not at issue on appeal, so the only basis for Unrein's failure to accommodate claim is the Medical Center's alleged unreasonable rescission of her flexible schedule.

her disability." *Hennagir v. Utah Dep't of Corr.*, 587 F.3d 1255, 1261 (10th Cir. 2009).

The district court's entry of judgment hinged on two conclusions: first, that an essential job function of the Clinical Dietitian position is physical presence at the hospital on a set and predictable schedule; and second, that Unrein could not perform this essential job function with or without reasonable accommodation. We address each conclusion in turn, reviewing the district court's factual findings for clear error and legal conclusions de novo. *See Gallardo v. United States*, 752 F.3d 865, 870 (10th Cir. 2014).

## B. *Essential Job Function*

"[E]ssential functions" of a position include "the fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. § 1630.2(n). The employee bears the burden of showing her ability, with or without reasonable accommodation, to perform the essential functions of her job. *See Hennagir*, 587 F.3d at 1262. But it is the employer who bears the burden of demonstrating that a job function is essential because, after all, the employer is in the best position to do so. *See Hawkins v. Schwan's Home Serv., Inc.*, 778 F.3d 877, 889 (10th Cir. 2015) (citing *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 991 (9th Cir. 2007)).

This is a "factual inquiry" in which "courts must give consideration to the employer's judgment as to what functions of a job are essential[.]" *Davidson v.*

*Am. Online, Inc.*, 337 F.3d 1179, 1191 (10th Cir. 2003); *see also* 42 U.S.C. § 12111(8). Indeed, "[w]e will not second guess the employer's judgment when its description is job-related, uniformly enforced, and consistent with business necessity." *Mason v. Avaya Commc'ns, Inc.*, 357 F.3d 1114, 1119 (10th Cir. 2004).

The district court concluded an essential job function of the Clinical Dietitian position is physical presence at the hospital on a set and predictable schedule. *See* Aplt. App. Vol. I at 156. On appeal, Unrein frames the district court's essential job function finding differently. She asserts the district court found a *full-time schedule* is an essential job function of the Clinical Dietitian position. But this framing is contrary to the district court's clear findings.

The district court listed some essential job functions of the Clinical Dietitian position, like working in close contact with patients and covering most of the hospital. Applying the correct legal standard, the district court explained each of these functions is job-related, uniformly enforced, and consistent with business necessity. *See Mason*, 357 F.3d at 1119. The district court then added that each essential job function "generally require[s] the Clinical Dietitian to be physically present at the hospital for at least four hours per work day and to have a set and predictable schedule to ensure quality patient care." Aplt. App. Vol. I at 156. Nowhere in the district court's findings of fact and conclusions of law does it find a full-time schedule is an essential job function. So, we need not address

Unrein's appellate argument asserting that a finding the district court never made was error.[5]

### C. Reasonable Accommodation

Because Unrein's disability indisputably precluded her from being physically present at the hospital on a set and predictable schedule, an essential job function of the Clinical Dietitian position, we must next determine whether the district court erred in finding Unrein's requested accommodation—a flexible schedule without a set schedule—was unreasonable. We find that it was unreasonable, both as a matter of law and common sense.

Although the reasonableness of an accommodation is generally reviewed for clear error, *see Tabura v. Kellogg USA*, 880 F.3d 544, 555 (10th Cir. 2018) (Title VII context), "an employee's request to be relieved from an essential function of her position is not, as a matter of law, a reasonable or even plausible accommodation." *Punt v. Kelly Servs*., 862 F.3d 1040, 1051 (10th Cir. 2017) (internal quotations omitted).

Unrein's flexible schedule request is just that: a request to be relieved from an essential function of her position. Her flexible schedule was unpredictable. She could never guarantee when, if, or how long she could be physically present at the hospital on a given day. Her flexible schedule request therefore sought

_____

[5] Even if Unrein challenged the essential job function finding actually made by the district court, we find no error. The district court applied the correct legal standard and its findings of fact were not clearly erroneous.

relief from physical presence at the hospital on a set and predictable schedule, which is an unreasonable accommodation as a matter of law. *See id.*

Common sense also compels this conclusion. Unrein's flexible schedule request seeks an accommodation for her transportation barrier, a problem she faces outside the workplace unrelated to an essential job function or a privilege of employment. Although the ADA places obligations on an employer like the Medical Center to accommodate disabled employees, this obligation is not absolute. Instead, the ADA only requires employers to make *reasonable* accommodations—those that enable disabled employees "to perform the essential functions of" their jobs or to "enjoy equal benefits and privileges of employment as are enjoyed by . . . other similarly situated employees without disabilities." C.F.R. § 1630.2(o); *see* 42 U.S.C. § 12112(b)(5)(A); *Sanchez v. Vilsack*, 695 F.3d 1174, 1182 (10th Cir. 2012); *Mason*, 357 F.3d at 1122–23. Transportation to and from work is not an essential function of the Clinical Dietitian position, nor is it a privilege of employment, so the Medical Center is under no legal obligation to accommodate her transportation barrier. *See, e.g.*, *Regan v. Faurecia Auto. Seating, Inc.*, 679 F.3d 475, 480 (6th Cir. 2012) (finding employee with narcolepsy's request for a commute during more convenient hours is not a reasonable accommodation because it aims to address a barrier outside the workplace); *Robinson v. Bodman*, 333 F. App'x 205, 208 (9th Cir. 2009) (unpublished) (finding employer is not required to accommodate disabled

-11-

employee's inability to drive to work or to use public transportation because an "employer is not required to eliminate barriers outside the workplace that make it more difficult for [an] employee to get to and from work").

This makes sense. The Medical Center cannot control where Unrein lives, whether there is public transportation available to her, or whether her friends or family can give her rides to and from work. It cannot control these variables for any employee, disabled or not. And although the Medical Center lacks the power to eliminate Unrein's transportation barrier, she could eliminate it—Unrein could move closer to the hospital or secure more reliable rides. It would therefore be unreasonable to require the Medical Center to sacrifice an essential job function of the Clinical Dietitian position when Unrein alone has the power to eliminate her transportation barrier.

An illustration might further make the point. Consider a non-disabled employee in the same position as Unrein, but for different reasons: he is a Clinical Dietitian, lives sixty miles from the Medical Center, and although he previously drove himself to work, his car broke down so he can no longer be physically present at the hospital on a set and predictable schedule. The Medical Center has no obligation to permit this employee to work a flexible schedule just because he can no longer get to work the way he used to. Whether a transportation barrier is caused by a broken car or legal blindness and unreliable rides, the analysis of an employer's obligations should not change if

transportation is unrelated to an essential job function and not a privilege of employment.

Nothing in this opinion should cast doubt on an employer's obligation under the ADA to make reasonable accommodations that enable disabled employees to perform the essential functions of their jobs. And responsible employers will continue to work with all employees to reach reasonable work arrangements, including obstacles outside the workplace. But employers have no obligation under the ADA to accommodate disabled employees for problems they face outside the workplace unrelated to the essential job functions of their positions or privileges of employment merely because they are disabled. *See, e.g.*, *Regan*, 679 F.3d at 480; *Robinson*, 333 F. App'x at 208.

The ADA thus does not require the Medical Center to accommodate Unrein's transportation barrier, so her request for a flexible schedule was unreasonable.

## III. Conclusion

The district court did not err by entering judgment in favor of the Medical Center on the failure to accommodate ADA claim. The district court properly found physical presence on a set and predictable schedule was an essential job function of the Clinical Dietitian position. And the district court also did not err by finding Unrein's flexible schedule request was unreasonable as a matter of law because it sought relief from that essential job function. Moreover, her flexible

schedule request was unreasonable because it aimed to address her transportation barrier, a problem she faced outside the workplace unrelated to an essential job function or a privilege of employment.

We accordingly **AFFIRM** the district court.