**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**December 19, 2023**

**Christopher M. Wolpert**
**Clerk of Court**

DANIELLE DAVIS,

    Plaintiff - Appellant,

v.

PHK STAFFING LLC, d/b/a Hollywood
Casino at Kansas Speedway,

    Defendant - Appellee.

------------------------------

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

    Amici Curiae.

No. 22-3246
(D.C. No. 2:21-CV-02142-HLT)
(D. Kan.)

_____

**ORDER AND JUDGMENT***
_____

Before **TYMKOVICH**, **McHUGH**, and **MORITZ**, Circuit Judges.
_____

For seven months, Danielle Davis worked for PHK Staffing LLC, doing

business as Hollywood Casino at Kansas Speedway. Davis suffered from severe

asthma, which at times caused her to arrive late, leave early, or miss work altogether.

After her employment ended, Davis sued Hollywood Casino under the American with

---

    * This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. But it may be cited for its
persuasive value. *See* Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

Disabilities Act (ADA), 42 U.S.C. §§ 12101–12213, alleging that it failed to accommodate her disability and then terminated her employment because of that disability. The district court granted summary judgment to Hollywood Casino on both claims, and Davis appeals.

We affirm. For her failure-to-accommodate claim, Davis cannot establish a prima facie case because she never requested a plausibly reasonable accommodation. And on her disparate-treatment claim, Davis fails to provide evidence that Hollywood Casino's proffered legitimate reason for terminating her employment—her violation of its attendance policy—was a pretext for discrimination.

## Background

Davis began her seven-month stint at Hollywood Casino in July 2019. Hollywood Casino operates table games (such as blackjack, roulette, and craps), and Davis worked in a dual role as a table-games dealer and supervisor.

Throughout Davis's employment, Hollywood Casino maintained a "no-fault attendance policy." App. vol. 2, 6. Under that policy, employees accumulate points for attendance "incidents" such as arriving late, leaving early, and being absent. App. vol. 1, 92. If an employee accrues more than 12 points in a rolling 12-month period, "[t]ermination will result." *Id.* at 91. Only certain absences do not count towards this limit, including those taken for bereavement or for work-related injuries. Hollywood Casino's no-fault attendance policy "expresses [its] requirement that employees be present and ready to work for the entirety of each scheduled shift." App. vol. 2, 6.

When Davis began working at Hollywood Casino, she asked Stephanie Beck,

2

who worked in human resources, about the availability of leave under the Family and Medical Leave Act (FMLA) for her severe asthma. Beck explained that Davis could not obtain FMLA leave until she had worked at Hollywood Casino for one year and that she could instead request an accommodation under the casino's ADA policy. Soon after this conversation, Davis informed Beck that she might need an accommodation, and Beck gave her documents to request one. But Davis decided not to proceed with the request at the time, believing she could comply with the attendance policy until she qualified for FMLA leave.

In October 2019, Davis's asthma symptoms worsened. On one occasion, she suffered an asthma attack at work, causing her to leave early. And a week later, she missed work because of an asthma flare-up. Davis received 3.5 points for these two attendance incidents.

The next month, Davis formally requested an accommodation for her disability. In particular, she asked Hollywood Casino to (1) not assess any attendance points or "h[o]ld [it] against her" if she "call[ed] in or le[ft] early due to [a] severe asthma attack" and (2) remove the points she received for the two asthma-related attendance incidents in October. App. vol. 1, 101. Davis also submitted a verification form completed by her physician, which stated that she had severe asthma and recommended leave as an accommodation. Two days after submitting the accommodation request and verification form, Davis again missed work because of her asthma and received one attendance point. She saw her physician that day and later gave Hollywood Casino a doctor's note confirming as much. The note also

3

reiterated that Davis "may need days off from work in the future due to chronic asthma and other flare-ups." *Id.* at 110.

After reviewing these documents, Beck determined that she needed additional information from Davis's physician to assess whether a reasonable accommodation was available. Beck attempted to obtain that information over the next few months, but Davis's physician was unresponsive and eventually just faxed back the verification form Davis had originally submitted. Citing insufficient information, Hollywood Casino denied Davis's accommodation request in February 2020.

Later that month, Davis was late to work due to an asthma attack. Davis received 1.5 points for her tardiness, which raised her total points to 13—above the 12-point limit under Hollywood Casino's attendance policy. When Davis arrived at the casino, she visited Beck in human resources to discuss the situation. The parties dispute what happened next: Davis maintains that Hollywood Casino fired her at the meeting, and Hollywood Casino asserts that she resigned before it could do so. In either event, Davis's employment ended in February 2020.

Davis then sued Hollywood Casino under the ADA, alleging that it failed to accommodate her disability and terminated her employment because of her disability.[1] The district court awarded summary judgment to Hollywood Casino on both her failure-to-accommodate and disparate-treatment claims.[2] Davis appeals.

---

[1] Davis also asserted an ADA retaliation claim, but she has abandoned that claim on appeal.

[2] To distinguish it from her failure-to-accommodate claim, the district court referred to Davis's claim that Hollywood Casino discriminated against her by

**Analysis**

Davis argues that the district court erred in granting summary judgment to Hollywood Casino. We review the district court's summary-judgment order de novo, applying the same standard as the district court. *Aubrey v. Koppes*, 975 F.3d 995, 1004 (10th Cir. 2020). Under this standard, summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We address Davis's failure-to-accommodate and disparate-treatment claims in turn.[3]

I.    **Failure to Accommodate**

To establish a prima facie failure-to-accommodate claim, Davis must "make an initial showing that '(1) she is disabled; (2) she is "otherwise qualified"; and (3) she requested a plausibly reasonable accommodation.'" *Herrmann v. Salt Lake City*

---

terminating her employment because of her disability as the "discrimination claim." App. vol. 2, 157. But an employer's failure to provide a reasonable accommodation to an otherwise qualified employee is also a type of discrimination under the ADA. *See* 42 U.S.C. § 12112(b)(5)(A); *Exby-Stolley v. Bd. of Cnty. Cmm'rs*, 979 F.3d 784, 797 (10th Cir. 2020) (en banc). Because this case involves two different discrimination claims, we refer to what the district court called Davis's "discrimination claim" as her "disparate-treatment claim." *See Edmonds-Radford v. Sw. Airlines Co.*, 17 F.4th 975, 989 (10th Cir. 2021).

[3] Before doing so, we pause to note that the Equal Employment Opportunity Commission filed an amicus brief supporting Davis in which it makes several arguments that she does not advance on appeal. Because an amicus is not a party, "we ordinarily decline to consider arguments raised only by an amicus." *Sierra Club v. EPA*, 964 F.3d 882, 897 n.15 (10th Cir. 2020). And we take that path here, discerning no reason "to stray from the parties' properly[ ]preserved arguments." *Dutcher v. Matheson*, 840 F.3d 1183, 1204 (10th Cir. 2016); *see also Tyler v. City of Manhattan*, 118 F.3d 1400, 1404 (10th Cir. 1997) (explaining that although we have discretion to reach arguments made solely in amicus brief, "we should exercise that discretion only in exceptional circumstances").

*Corp.*, 21 F.4th 666, 674 (10th Cir. 2021) (quoting *Punt v. Kelly Servs.*, 862 F.3d 1040, 1050 (10th Cir. 2017)). If she does so, the burden shifts to Hollywood Casino to present evidence either "conclusively rebutting one or more elements of [Davis]'s prima facie case" or "establishing an affirmative defense." *Id.* (quoting *Punt*, 862 F.3d at 1050).

We begin and end with the third element of the prima facie test: whether Davis requested a plausibly reasonable accommodation. A reasonable accommodation is one that "presently, or in the near future, enable[s] the employee to perform the essential functions of h[er] job." *Aubrey*, 975 F.3d at 1007 (quoting *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1205 (10th Cir. 2018)). "The determination of whether a requested accommodation is reasonable must be made on the facts of each case[,] taking into consideration the particular individual's disability and employment position." *Id.* (quoting *Punt*, 862 F.3d at 1050). Davis contends that she requested two plausibly reasonable accommodations: (1) unscheduled leave as necessary; and (2) removal of the points she accrued for her two asthma-related attendance incidents in October 2019.

## A.    Unscheduled Leave

We first consider Davis's request that Hollywood Casino allow her to leave early, arrive late, and miss work altogether on an unscheduled, as-needed basis. The district court determined that this open-ended leave request would require eliminating an essential function of Davis's job: regular and reliable attendance. *See Mason v. Avaya Commc'ns, Inc.*, 357 F.3d 1114, 1119 (10th Cir. 2004) ("[P]hysical attendance

6

in the workplace is itself an essential function of most jobs."). And for that reason, the district court concluded, the requested accommodation was unreasonable. *See Unrein v. PHC-Fort Morgan, Inc.*, 993 F.3d 873, 878 (10th Cir. 2021) ("[A]n employee's request to be relieved from an essential function of her position is not, as a matter of law, a reasonable or even plausible accommodation." (quoting *Punt*, 862 F.3d at 1051)).

Challenging this conclusion, Davis argues that a genuine dispute exists as to whether regular and reliable attendance is an essential job function. But Hollywood Casino's vice president of human resources explained that regular and reliable attendance is itself an essential function, and a prerequisite to other essential functions, of all positions at the casino. This is particularly true for employees in the table-games department, the vice president stated, because they operate table games—the core service Hollywood Casino offers its customers—in person at the casino. According to the vice president, unscheduled absences by dealers "can result in insufficient staffing to [run] the desired number of table games," making such absences especially disruptive. App. vol. 1, 151. And it is undisputed that Hollywood Casino's no-fault attendance policy "expresses [its] requirement that employees be present and ready to work for the entirety of each scheduled shift." App. vol. 2, 6.

To be sure, regular and reliable attendance does not become an essential function simply because Hollywood Casino says so. Davis could rebut that assertion with evidence that the attendance requirement was not "job-related, uniformly enforced, [or] consistent with business necessity." *Mason*, 357 F.3d at 1119. But

7

without such evidence, we generally defer to the employer's judgment about whether a job function is essential. *Id.*

Davis offers no rebuttal evidence here. Instead, she simply highlights that Hollywood Casino's attendance policy allows for some unscheduled absences, such as when an employee misses work because of a death in the family or a work-related injury. But Davis does not explain, and we fail to see, how the mere fact that Hollywood Casino excuses unscheduled absences in these limited circumstances undermines its judgment about whether regular and reliable attendance is an essential job function. *See Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1239 (9th Cir. 2012) (holding that regular attendance constituted essential function even though employer's attendance policy "allow[ed] for some unplanned absences"); *Higgins v. Union Pac. R.R. Co.*, 931 F.3d 664, 670 (8th Cir. 2019) ("The fact that the attendance policy allows for 'personal lay-offs' under certain circumstances does not create a material question of fact regarding whether job attendance is an essential function."). Thus, the district court properly concluded that regular and reliable attendance is an essential job function.

Davis next contends that even if regular and reliable attendance is an essential job function, she could have performed this function had Hollywood Casino allowed her to take unscheduled absences as needed. To be sure, as Davis emphasizes, leave can constitute a reasonable accommodation even when attendance is an essential job function—it "may allow an employee sufficient time to recover from an injury or illness such that the employee can perform the essential functions of the job (i.e.,

8

attend work) in the future." *Punt*, 862 F.3d at 1051 (quoting *Cisneros v. Wilson*, 226 F.3d 1113, 1129 (10th Cir. 2000), *overruled on other grounds by Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356 (2001)). But "the term 'reasonable accommodation' refers to those accommodations which presently, or in the *near future*, enable the employee to perform the essential functions of his job." *Id.* (quoting *Cisneros*, 226 F.3d at 1129). So "a request for indefinite leave is not reasonable as a matter of law." *Herrmann*, 21 F.4th at 676.

And Davis's request was just that: a request for an open-ended, indefinite amount of time off from work. Indeed, she asked that Hollywood Casino allow her to "call[] in or leave[] early" as needed, on an unscheduled basis, without accumulating any attendance points. App. vol. 1, 101. This proposed accommodation would have permitted Davis to work an open-ended schedule with the freedom to arrive late, leave early, or stay home as often as she felt she needed to, for an indefinite length of time. We agree with the district court that such an open-ended leave request—which effectively sought an exemption from the essential job function of regularly and reliably attending work—was unreasonable. *See Unrein*, 993 F.3d at 878 (holding that employee's request for flexible schedule sought "unreasonable accommodation as a matter of law" where "physical presence . . . on a set and predictable schedule" constituted essential job function).

Resisting this conclusion, Davis attempts to dispute the open-endedness of her leave request. She contends that a reasonable jury could find she intended to use intermittent leave under the ADA only until she became eligible for FMLA leave. As

support, Davis notes that she requested this accommodation after asking Beck about the availability of FMLA leave and learning that she did not yet qualify for it. But no record evidence suggests that Davis ever informed Hollywood Casino she needed the accommodation only until she could obtain FMLA leave or that Hollywood Casino understood as much; nor is there any evidence that Davis estimated how often she would need to miss work until she had access to FMLA leave. Davis therefore failed to establish a genuine dispute about the open-endedness of her leave request. *Cf. Dansie v. Union Pac. R.R. Co.*, 42 F.4th 1184, 1195 (10th Cir. 2022) (holding that employee established genuine dispute over leave request's open-endedness by providing evidence that "he requested up to five days off per month for a specific period of time—until he could obtain FMLA leave"). For these reasons, no reasonable jury could find that Davis's leave request was plausibly reasonable.

### B.     Removal of Attendance Points

We next consider Davis's request that Hollywood Casino remove the points she received for her two October 2019 asthma-related attendance incidents. In the district court's view, this point-removal request merely asked Hollywood Casino to excuse past misconduct and was therefore unreasonable. *See DeWitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1316 (10th Cir. 2017) (holding that ADA "does not require employers to reasonably accommodate an employee's disability by overlooking past misconduct," even if such "misconduct resulted from the employee's disability").

On appeal, Davis argues that she never sought forgiveness for any misconduct. Contrary to the district court's view, Davis says, missing work "does not necessarily

amount to 'misconduct' when considering the plain meaning of the word." Aplt. Br. 28. But even if we agreed with Davis, it would not render her point-removal request plausibly reasonable. "An employer may impose disciplinary action, consistent with its policies as applied to other employees, for attendance problems that occurred prior to a request for reasonable accommodation," and the ADA does not require it to rescind such discipline when asked to do so. U.S. Equal Emp. Opportunity Comm'n, The Americans with Disabilities Act: Applying Performance and Conduct Standards to Employees with Disabilities, 2008 WL 4786697, at *23 (2008); *see also DeWitt*, 845 F.3d at 1318 ("[A] denied request for retroactive leniency cannot support an accommodation claim . . . ."). Here, the October 2019 attendance incidents occurred before Davis made her accommodation request, so Hollywood Casino had no obligation to withdraw the points it gave her for those incidents. Moreover, Davis fails to show that granting her point-removal request would have equipped her to attend work regularly and reliably moving forward. Indeed, as her open-ended leave request and attendance incidents illustrate, Davis needed more flexibility and time off from work than this accommodation would have given her. *See Aubrey*, 975 F.3d at 1007 (explaining that for accommodation to be reasonable, it must "presently, or in the near future, enable the employee to perform the essential functions of h[er] job"). For these reasons, Davis's point-removal request was not plausibly reasonable.

Because neither accommodation she requested was plausibly reasonable, Davis failed to establish a prima facie case for failure to accommodate. *See Herrmann*, 21

F.4th at 674. The district court therefore properly granted summary judgment to Hollywood Casino on Davis's failure-to-accommodate claim.

## II.     Disparate Treatment

As for her disparate-treatment claim, Davis proceeds under the familiar burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Edmonds-Radford*, 17 F.4th at 989. At the first step of this framework, Davis must establish a prima facie case of discrimination. *Id.* This requires Davis to show that "(1) she is disabled within the meaning of the ADA, (2) she is qualified to perform the essential functions of the job with or without accommodation, and (3) she suffered an adverse employment action because of her disability." *Id.* at 989–90. At the second step, the burden shifts to Hollywood Casino to "offer a legitimate, nondiscriminatory reason for termination." *Id.* at 990. If Hollywood Casino does so, the burden returns to Davis at the third step "to show a genuine issue as to whether [that] reason was pretextual." *Id.*

For our purposes, we will assume that Davis established a prima facie case of discrimination. And we agree with the district court that Hollywood Casino offered a legitimate, nondiscriminatory reason for terminating her employment: Davis accrued more than 12 points in a rolling 12-month period, in violation of the attendance policy. We therefore focus our analysis on pretext.

To show pretext, Davis "must come forward with evidence that [Hollywood Casino] didn't really believe its proffered reason[] for action and thus may have been pursuing a hidden discriminatory agenda." *DeWitt*, 845 F.3d at 1307. She can do so

12

by exposing "such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in [Hollywood Casino]'s proffered legitimate reason[] for its action that a reasonable factfinder could rationally find [that reason] unworthy of credence." *Id.* (quoting *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997)). Typically, a plaintiff establishes pretext with evidence that: (1) "the defendant's stated reason for the adverse employment action was false"; (2) "the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances"; or (3) the defendant treated the plaintiff "differently from other similarly[ ]situated employees who violated work rules of comparable seriousness." *Id.* (quoting *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000)).

Davis asserts that a genuine issue of material fact exists as to pretext. Yet she points to no evidence suggesting that Hollywood Casino's reason for terminating her employment was false or contrary to a written policy; she does not dispute that she accumulated 13 points in a rolling 12-month period and that Hollywood Casino's attendance policy requires termination in this situation. Nor does Davis point to evidence that Hollywood Casino treated her differently from other similarly situated employees. Indeed, she identifies no employee who received leniency under the attendance policy for arriving late, leaving early, or missing work altogether on an unscheduled basis for medical reasons. In short, Davis offers no evidence that would allow a reasonable jury to find Hollywood Casino's stated reason for terminating her employment "unworthy of credence." *Id.* (quoting *Morgan*, 108 F.3d at 1323). Davis

therefore failed to establish a genuine dispute of material fact as to pretext, and the district court correctly granted summary judgment for Hollywood Casino on her disparate-treatment claim.

## Conclusion

Davis failed to establish a genuine dispute of material fact on her ADA disability claims. As to her failure-to-accommodate claim, Davis cannot establish a prima facie case because neither her open-ended leave request nor her point-removal request was plausibly reasonable. And as to her disparate-treatment claim, Davis failed to present evidence that Hollywood Casino's legitimate reason for terminating her employment—her attendance-policy violation—was a pretext for discrimination. We therefore affirm the district court's order granting summary judgment to Hollywood Casino.

Entered for the Court

Nancy L. Moritz
Circuit Judge